**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MICHAEL J. MARTIN,**

       **Petitioner,**

**v.**                                **Case No. 4:22cv025-MW/MAF**

**RICKY D. DIXON,**

       **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On January 20, 2022, Petitioner Michael J. Martin, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On May 24, 2022, Respondent filed an answer, with exhibits. ECF No. 9. Petitioner filed a reply on November 28, 2022. ECF No. 16.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the filings before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By information filed July 17, 2012, in Leon County Circuit Court Case 12-CF-1900, the State of Florida charged Petitioner Michael J. Martin with two counts, in connection with events that occurred on or about May 3, 2012: (1) aggravated battery with a firearm, a second degree felony, in violation of sections 775.087 and 784.045(1)(a)2., Florida Statutes; and (2) possession of a firearm by a convicted felon, a second degree felony, in violation of section 790.23(1)(a), Florida Statutes.  Ex. B1 at 13.[1]  The charges arose from an altercation in a Circle K parking lot, involving several individuals, including Martin and his cousin, Brian Martin, as well as the victim, Casper Dickey.

Martin proceeded to a jury trial on Count 1 on December 5, 2013, presided over by Judge Frank Sheffield.  Exs. B3-B4 (trial transcript).  The defense's main theory of the case was that Martin "acted in lawful self-defense or defense of his cousin."  Ex. B3 at 22.  Casper Dickey testified at the trial that he was "pretty drunk," *id*. at 24, 30; he arrived at the Circle K, "we were talking and exchanging words and the fight broke out" between him and Brian, *id*. at 28, 30; at some point, he was shot by someone, *id*. at 30;

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 9.

he did not see who shot him, *id*.; he did not have a gun, *id*. at 31; he did not

"remember any gunshot," *id*., and he did not hear any gunshots, *id*. at 32.

Martin also testified at the trial. Ex. B4 at 105-07, 165-86 (direct), 186-

98 (cross), 199 (redirect). Among other things, Martin testified on direct that

he and the victim had been in prison together, *id*. at 167; the victim and

Martin's cousin, Brian, started fighting at the Circle K, *id*. at 171; another

individual, Brad, struck Brian in the head with a gun, *id*. at 173; Martin then

ran toward his car to leave, *id*. at 174; Martin turned around and saw Brian,

bleeding, on the ground saying "help me," *id*.; Martin heard gunshots, *id*. at

177; Martin saw his friend, Leamont Gavin, with a gun, and Martin "snatched"

the gun, "ran up [and] closed [his] eyes" and "just did like that," shot the gun

once, "just trying to stop it," and when he opened his eyes, "there wasn't

nobody there," *id*. at 174-75, 176, 177.

A surveillance video from Circle K was admitted into evidence as

State's Exhibit 24 and played for the jury. Ex. B3 at 58-66. While the jury

deliberated, the judge asked Martin about his defense attorney's

representation:

THE COURT:  I need to ask you some questions at this time.

THE DEFENDANT:  Yes, sir.

THE COURT:  And remember you are under oath from when I
previously asked you questions before.

THE DEFENDANT:  Yes, sir.

THE COURT:  At this time, are you completely satisfied with your lawyer's assistance and representation in this case?

THE DEFENDANT:  Yeah.

THE COURT:  That's a definite yeah?

THE DEFENDANT:  Yeah.

. . . .

THE COURT:  Was there any defense that you asked him to raise in this case that he refused to raise?  Other than not guilty.  You've said, I'm not guilty, and then you've said self-defense.  He raised both of those.

Was there anything else you wanted him to raise that he didn't raise?

THE DEFENDANT:  No, sir.

Ex. B4 at 258-60.

The jury found Martin guilty as charged and made specific findings that he actually possessed a firearm during the commission of the offense, he discharged the firearm during the offense, and such inflicted death or great bodily harm.  Ex. B4 at 262-64; Ex. B1 at 75.  The case then proceeded to the bifurcated second phase, after which the jury found him guilty as charged on Count 2.  Ex. B4 at 278; Ex. B1 at 82.  On January 30, 2014, the trial court adjudicated him guilty and sentenced him to a minimum mandatory sentence

of twenty-five (25) years in prison on Count 1 and five (5) years in prison on Count 2, to run consecutively.  Ex. B1 at 85-95; 106-16.

Martin appealed to the First District Court of Appeal (First DCA), assigned case number 1D14-910.  Ex. B1 at 97-98.  Through counsel, on May 22, 2015, he filed an Initial Brief raising three points:  (1) the trial court erred by denying Martin's Stand Your Ground motion for immunity; (2) the trial court erred by denying Martin's motion for judgment of acquittal; and (3) the trial court erred by imposing the sentence for Count 2 to be served consecutive to the sentence for Count 1.  Ex. B8 at ii-iii.  The State filed an Answer Brief on September 8, 2015.  Ex. B9.  Martin filed a Reply Brief on November 4, 2015.  Ex. B10.  In an opinion issued May 6, 2016, the First DCA affirmed as to all issues raised.  Ex. B11; Martin v. State, 190 So. 3d 252 (Fla. 1st DCA 2016).

Through counsel, on June 6, 2016, Martin filed a Notice to Invoke the Discretionary Jurisdiction of the Florida Supreme Court.  Ex. B13.  That court ultimately entered an order on May 26, 2017, denying the petition for discretionary review.  Ex. C3; Martin v. State, No. SC16-1028, 2017 WL 2298446 (Fla. May 26, 2017).

During the pendency of the direct appeal, through counsel, Martin filed a motion to correct sentencing errors pursuant to Florida Rule of Criminal

Procedure 3.800(b)(2).  Ex. B6 at 117-21, 122-26.  Judge Sheffield granted the motion and, on January 27, 2015, resentenced Martin to twenty (20) years on Count 1, with no change to the sentence on Count 2.  Ex. B6 at 135-38, 141-51; Ex. B7 (transcript of re-sentencing hearing).

On August 30, 2017, Martin filed a pro se Petition Alleging Ineffective Assistance of Appellate Counsel in the First DCA, assigned case number 1D17-3655.  Ex. D1.  The State filed a response on November 12, 2017.  Ex. D2.  Martin filed a reply.  Ex. D3.  On October 31, 2018, Judges Osterhaus and Winsor denied the petition with no explanation.  Ex. D4; Martin v. State, 257 So. 3d 153 (Fla. 1st DCA 2018).  Judge Wolf dissented, stating only that he "would grant the petition for ineffective assistance of appellate counsel," and citing Andujar-Ruiz v. State, 205 So. 3d 803 (Fla. 2d DCA 2016).  Ex. D4.  The court denied Martin's motion for enlargement of time to move for rehearing on November 15, 2018.  Exs. D5, D6.

On November 2, 2018, Martin filed a pro se Motion for Postconviction Relief, pursuant to Florida Rule of Criminal Procedure 3.850, alleging five (5) claims of ineffective assistance of counsel.  Ex. E1 at 4-32.  On November 28, 2018, the state postconviction trial court, Judge Angela C. Dempsey, denied the motion as time-barred.  *Id*. at 33-40.  Martin sought rehearing, *id*. at 41-43, which the court granted, *id*. at 49, setting an evidentiary hearing.

The evidentiary hearing took place June 14, 2019, before Judge Barbara K. Hobbs, and Martin was represented by counsel, Richard A. Greenberg. *Id*. at 125-88. It was noted at the outset of the hearing that Martin's trial counsel had died. *Id*. at 134. Judge Hobbs rendered an order on October 10, 2019, denying all five claims. *Id*. at 117-22. Martin appealed to the First DCA, pro se, assigned case number 1D19-4225. *Id*. at 123. He filed an initial brief. Ex. E3. The State filed an answer brief. Ex. E4. On January 29, 2021, the First DCA affirmed the case per curiam, without a written opinion. Ex. E5; Martin v. State, 310 So. 3d 920 (Fla. 1st DCA 2021) (table). The mandate issued February 26, 2021. Ex. E6.

On January 20, 2022, Martin filed this § 2254 petition. ECF No. 1. The petition presents six grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Appellate Counsel**: "Appellate counsel was ineffective for failing to raise a claim that the justifiable use of force instruction given at trial negated his sole defense and constituted fundamental error." *Id*. at 16.

(2) **IAC – No Pre-Trial Motion to Immunize from Prosecution**: "Trial Counsel . . . was ineffective for failing to file a pre-trial motion to immunize Martin from prosecution in accordance with § 776.032, Fla. Stat. (2011)." *Id*. at 22.

(3) **IAC – No Detailed Order Denying Immunity Motion**: "Counsel was ineffective when he failed to obtain a detailed order from the trial court when his post-trial immunity motion was denied." *Id*. at 8.

(4) **IAC – No Special Instruction**: "Trial Counsel was ineffective for failing to request [a] special instruction on Martin's right to possess a firearm by a convicted felon for limited purposes." *Id*. at 31.

(5) **IAC – No Objection to Erroneous Instruction**: "Trial counsel was ineffective for failing to object to the erroneous justifiable use of force instruction." *Id*. at 36.

(6) **IAC – Cumulative**: "The cumulative effect of Counsel's errors resulted in ineffective assistance of counsel." *Id*. at 15.

On May 24, 2022, Respondent filed an answer, with exhibits. ECF No. 9.

Petitioner filed a reply on November 28, 2022. ECF No. 16.

<u>**Analysis**</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's

purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   Id.   It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."   Id.

For purposes of analysis, the undersigned considers the IAC claims regarding trial counsel (Grounds 2 through 6) before the IAC claim regarding appellate counsel (Ground 1).  Thus, Ground 1 is addressed after Grounds 2 through 6, *infra*.

### Ground 2:  IAC – No Pre-Trial Motion to Immunize from Prosecution

In his second ground, Petitioner Martin asserts his trial counsel provided ineffective assistance because he did not "file a pre-trial motion to immunize Martin from prosecution in accordance with § 776.032, Fla. Stat. (2011)."  ECF No. 1 at 22.  As Respondent indicates, Martin raised this ground in state court as the first claim in his Rule 3.850 motion.  Ex. E1 at 18-22; *see* ECF No. 9 at 8.  After setting forth the Strickland standard, the

state post-conviction trial court denied the claim, making the following

findings:

> In Ground One, the Defendant alleges that trial counsel, Clifford Davis, rendered ineffective assistance of counsel by failing to file a pretrial motion to immunize him from prosecution in accordance with §776.032, Fla. Stat. (2011) (Hereinafter SYG (Stand Your Ground) motion). Although Mr. Davis did not file a pretrial SYG motion, the issue was raised by Mr. Davis after the close of the evidence and the Court denied Defense's request for immunity under SYG. (Tr., p. 208-209)

> "[O]rdinarily, and best practice, the merits of a motion to dismiss filed under Florida's Stand Your Ground law should be determined before trial at a pretrial evidentiary hearing because the central purpose of such a motion is for the defendant to seek immunity from trial." Boston v. State, 260 So. 3d 445, 447 (Fla. 1st DCA 2018) (emphasis in original). However, failure to file the motion pretrial does not in and of itself constitute ineffective assistance of counsel. Mr. Davis asked the Court to immunize his client under Stand Your Ground after the close of the evidence and the Court considered all of the evidence presented during trial and denied the Defense's motion. Notwithstanding the fact that the Court did not hear the motion pretrial, the Defendant was not prejudiced because the Court still considered the Defendant's request and denied the request on its merits. Defense counsel has failed to show that had the Court made a determination on the issue pretrial that it would have come to a different conclusion. Therefore, the Defendant has failed to establish the second prong of the Strickland test by failing to show that even if this Court concludes Mr. Davis acted ineffectively in failing to file and set for hearing the Stand Your Ground motion pretrial, the Defendant was prejudiced. Therefore Ground 1 is **DENIED**.

Ex. E1 at 118-19. On appeal, the First DCA per curiam affirmed the case

without a written opinion. Ex. E5; Martin v. State, 310 So. 3d 920 (Fla. 1st

DCA 2021) (table).  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

As an initial matter, as Respondent indicates, the underlying issue in this claim involves a point of state law, specifically the interpretation and application of Florida's Stand Your Ground law.  *See* ECF No. 9 at 26.  Thus, to the extent resolution of the IAC claim requires interpretation of state law, "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."  Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997).  *See, e.g.*, Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); Pinkney v. Sec'y, Dep't of Corr., 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that ... counsel failed to raise turns on state law.").

Further, a review of the record supports the state courts' determination.  *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.  Specifically, at the close of all evidence, the following transpired on the record:

> MR. DAVIS [defense counsel]:  Judge, and I also need to file the stand your ground motion, if I can find it, requesting that you find by the preponderance of the evidence that he has immunity.  I have a motion in memorandum and also the convicted felon.
>
> THE COURT:  You filed it, I reviewed it, I denied it.
>
> MR. DAVIS:  Well, I have got to file it.
>
> THE COURT:  Well, I mean, you can file it.  But I'm saying –
>
> MR. DAVIS:  Yes, sir.  And with that we rest.
>
> THE COURT:  Right.
> . . . .
>
> All right.  Well, motion immunized defendant from prosecution under 776.032.  I'm not going to do that.  Denied.
>
> I will, I will enter, I am required under the rules to enter a long written order as to why I'm denying that.  I will do that so we have it in the record.
>
> MR. DAVIS:  Yes, sir.
>
> THE COURT:  But I'm not going to rule that stand your ground.  And you can argue justifiable use of deadly force to the jury, but this is not a stand your ground case.
>
> File that in the file, please.

Ex. B4 at 208-09.  Given the trial court's determination that "this is not a stand your ground case," in ruling on defense counsel's motion made after the close of evidence, nothing indicates the court would have reached a different conclusion if defense counsel had filed the motion before trial.  *See generally, e.g.*, <u>Boyington v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:18cv810-

BJD/MCR, 2021 WL 719644, at *5 (M.D. Fla. Feb. 24, 2021) (order denying § 2254 petition that included IAC claim based on decision not to file pre-trial "Stand Your Ground" immunity motion and explaining as to that claim, among other things, "[w]hen counsel made a strategic decision not to raise the Stand Your Ground Immunity issue prior to trial, he based it on the state of the law at the relevant time, and he knew and understood the Stand Your Ground law and made a strategic decision not to raise the matter pre-trial" and "[a] decision to not lodge a stand-your-ground challenge pre-trial is 'the kind of reasonable strategic decision that cannot be attacked through a collateral claim of ineffectiveness' " (quoting Edwards v. Att'y Gen., State of Ala., No. 19-13739-G, 2020 WL 1540405, at *3 (11th Cir. 2020)).

Notably, the Middle District of Florida denied a petitioner's challenge to his 2010 conviction for attempted first-degree murder with a firearm, rejecting his argument that his trial counsel provided ineffective assistance by not moving to dismiss the charges against him under Florida's Stand Your Ground law. Reyes v. Sec'y, Dep't of Corr., No. 5:17cv231-Oc-39PRL, 2020 WL 3542651, at *1, *6-11 (M.D. Fla. June 30, 2020). The district court reviewed "the relevant law at the time" and concluded "counsel's decision was reasonable under the circumstances." Id. at *8. Of particular interest, the court explained the history of the Stand Your Ground (SYG) law:

Florida's SYG law was enacted in 2005 under Florida Statutes chapter 766.[2]  The provision that grants immunity for the use of force is found in section 776.032.  That provision provides, "A person who uses . . . force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution . . . ."  Fla. Stat. § 776.032.  Per the plain language of the statute, a person who uses force is entitled to immunity under section 776.032 only if his conduct was permitted under one of three other provisions. *See, e.g.*, <u>Little v. State</u>, 111 So. 3d 214 (Fla. 2d DCA 2013) (explaining the history of the SYG law and the interplay between the provisions comprising the law).

Based on the facts of Petitioner's case, the provisions that potentially could have applied are 776.012 and 776.013(3).  In 2008, when Petitioner was charged, both sections 776.012 and 776.013(3) authorized the use of force if the person using force "reasonably believ[ed] that such force [was] necessary" to prevent "imminent death or great bodily harm," in the case of section 776.012, or to "prevent death or great bodily harm," in the case of section 776.013.  *See* Fla. Stat. §§ 776.012(1), 776.013(3) (2005).  The main difference between the two provisions, as relevant to Petitioner's case, was that, under the 2005 version of the SYG law, section 776.013(3) extended immunity only if the person using force was "not engaged in unlawful activity."  *See* Fla. Stat. § 776.013(3) (2005).  At the time, section 776.012 did not expressly include such a limitation.

*Id*. (footnotes omitted).  The same is true in Martin's case, as the same

versions of these statutes were in effect at the time of his offense (May 2012)

and trial (December 2013).

---

[2] In the "slip copy" on Westlaw, the references to "766" appear to have come from the original document. Where the Westlaw document contains hyperlinks to the statutory provisions, those appear as "776."

The court in <u>Reyes</u> continued its analysis, explaining that petitioner's trial counsel had a reasonable understanding of the statute as it existed at the time, and setting forth a detailed history of Florida courts' interpretation of the law, including a conflict among the Florida DCAs:

> In his Petition, Petitioner does not explain why the postconviction court's ruling was incorrect or his attorney ineffective. It is uncontradicted that Petitioner was a convicted felon when he shot the victim. Thus, the postconviction court correctly concluded Petitioner could not have benefited from immunity by application of section 776.013(3) because Petitioner was engaged in unlawful activity at the time of the shooting (being a convicted felon in possession of a firearm).

> Petitioner's argument only becomes clear upon review of his brief on appeal [from the denial of postconviction relief]. On appeal, Petitioner argued, through counsel, that his trial counsel "was not properly versed [in] or miscalculated the law." According to Petitioner's appellate counsel, his trial counsel failed to appreciate that section 766.012 did not include the "unlawful activity" exception unlike section 766.013(3). Petitioner's appellate counsel noted the postconviction court, too, failed to appreciate the distinction. Petitioner's counsel encouraged the appellate court to review two cases "to fully understand" the subtle difference between sections 776.012 and 766.013(3).

> Contrary to Petitioner's argument in his appellate brief, it does not appear his trial counsel was misinformed or "not properly versed" in the law. In fact, Petitioner's counsel testified at the evidentiary hearing that he considered whether he had a good-faith argument to assert SYG immunity and concluded, based on his understanding of the law at the time, that such an argument would have been meritless.

> Upon review of the applicable law at the time, Petitioner's counsel's understanding of the SYG law was reasonable. The

2005 version of section 766.013(3), which courts commonly referred to as the "Stand Your Ground" law, provided as follows:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force . . . .

Fla. Stat. § 766.013(3) (2005). *See, e.g.*, State v. Hill (Hill I), 95 So. 3d 434, 435 (Fla. 4th DCA 2012) (describing the SYG law as being codified in section 766.013(3), which includes the "unlawful activity" exception); Dorsey v. State (Dorsey I), 74 So. 3d 521, 527 (Fla. 4th DCA 2011) (same).

> The 2005 version of section 776.012 provided as follows:

> [A] person is justified in the use of deadly force and does not have a duty to retreat if:

> (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or

> (2) Under those circumstances permitted pursuant to s. 776.013.

Fla. Stat. § 766.012 (2005). This provision included no express "unlawful activity" exception, though some practitioners and courts interpreted section 766.012 as engrafting onto it, by reference to section 766.013, the "unlawful activity" exception contained in that provision. In fact, Florida appellate courts eventually started to note and address the controversy the 2005 law sparked regarding whether section 776.012, by reference to 776.013, incorporated the "unlawful activity" exception. *See, e.g.*, Hill v. State (Hill II), 143 So. 3d 981, 984 (Fla. 4th DCA 2014). *See also* Brown v. State, 135 So. 3d 1160, 1160 n.1, 1162 (Fla. 4th DCA 2014).

Given the controversy engendered by the 2005 law, in 2013, the Second DCA certified a question to the Florida Supreme Court, which pinpointed a perceived inter-district conflict. *See* Little, 111 So. 3d at 222-23. In Little, the court held the defendant was entitled to immunity under section 776.012(1) even though his use of force was not permitted under section 776.013(3) because the "unlawful activity" exception applied. *Id.* at 222. The Second DCA noted that a Fourth DCA decision, Hill I, could be read broadly as holding the opposite – "that a defendant who is engaged in an unlawful activity is not entitled to immunity under section 776.032(1)," which incorporates by reference section 776.012. *Id.* (emphasis added).

Recognizing that its decision conflicted with the Fourth DCA's Hill I decision, the Second DCA certified the following question to the Florida Supreme Court: "Is a defendant who establishes . . . that his use of deadly force is permitted in section 776.012(1), Florida Statutes (2009), entitled to immunity under section 776.032(1) even though he is engaged in an unlawful activity at the time he uses the deadly force?" *Id.* Significantly, the court noted that it could find no case law addressing this specific issue. *Id.*

After the Little decision, there was a flurry of case law clarifying that sections 776.012 and 776.013(3) provide distinct avenues through which to invoke immunity under section 776.032, and that only one section conditioned immunity on a person's lawful conduct. The Fourth DCA even issued a decision to "eliminate any perceived conflict between [the DCA's] positions on this issue." Hill II, 143 So. 3d at 983 n.2. The Fourth DCA receded from its statement in Hill I "that a felon in possession of a firearm cannot claim immunity 'under the Stand Your Ground law' because the statement unintentionally went beyond the statutory provision at hand – section 766.013(3)." *Id.* at 985 (emphasis in original). *See also* Brown, 135 So. 3d at 1160 n.1, 1162 (noting the imprecise common parlance "Stand Your Ground" should be avoided because it caused confusion as "illustrated by the certified conflict" presented in the Little decision).

*Id.* at *8-10 (record citations and footnotes omitted). Given this extensive analysis of the pre-2014 statutes and case law, the court concluded that petitioner had not shown his trial counsel provided ineffective assistance (no deficient performance and no prejudice):

> Upon careful review of case law interpreting the pre-2014 SYG law, and of the law itself, Petitioner fails to demonstrate his trial counsel's performance was deficient under Strickland simply because counsel failed to know in 2008 what Florida appellate courts did not make clear until at least 2014. The two cases Petitioner cited in his appellate brief certainly illuminate the issue and eviscerate any doubt whether the 2005 version of section 776.012 incorporated the "unlawful activity" exception expressly included in section 776.013(3). However, Miles and Dorsey II were decided many years after Petitioner was arrested and tried. As discussed, at least before 2013, the apparent understanding of the SYG law was that immunity was unavailable to convicted felons in possession of guns.

> Even if Petitioner's trial counsel could have argued in 2008 that section 776.012 should apply regardless of a defendant's unlawful activity, under the circumstances, his failure to do so was reasonable. *See* Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). The Strickland standard does not demand criminal defense attorneys be legal trailblazers or statutory interpretation scholars. Bates v. Sec'y, Fla. Dep't of Corr., 768 F.3d 1278, 1295 (11th Cir. 2014) ("[The Strickland] test 'has nothing to do with what the best lawyers would have done . . . [or] even what most good lawyers would have done.").

> Accordingly, Petitioner fails to demonstrate his trial counsel's performance was deficient. *See* Brown v. United States, 219 F. App'x 917, 918 (11th Cir. 2007) ("Unless the petitioner can rebut the 'strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance,' he cannot establish that counsel's performance was constitutionally deficient."). But assuming counsel's performance was deficient, Petitioner is unable to demonstrate prejudice. Other than by speculation and conjecture, Petitioner does not assert a motion to suppress his charges under the SYG law, as interpreted in 2008, would have succeeded.  Notably, the postconviction court agreed with trial counsel's assessment of the law, concluding that section 776.013(3)'s "unlawful activity" exception would have barred Petitioner from seeking SYG immunity.

*Id*. at *10-11 (footnotes omitted).

In this case, because Martin's trial counsel died before the evidentiary hearing on Martin's postconviction motion, what counsel believed regarding specific applicability of the statutes remains unknown.  Nonetheless, unlike counsel in <u>Reyes</u>, Martin's trial counsel did file a motion, albeit not prior to trial, and the court denied that motion.  As the postconviction court concluded, Martin has not shown that the trial court would have ruled differently if the motion had been filed prior to the trial.

Based on the foregoing, Petitioner Martin has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## <u>Ground 3</u>:  IAC – No Detailed Order Denying Immunity Motion

In his third ground, Petitioner Martin asserts his trial counsel provided

ineffective assistance because "he failed to obtain a detailed order from the

trial court when his post-trial immunity motion was denied."  ECF No. 1 at 8

Martin raised this claim as the second ground in his Rule 3.850 motion.  *See*

Ex. E1 at 22-24.  The state post-conviction trial court denied the claim:

> In Ground Two, the Defendant alleges that Mr. Davis
> rendered ineffective assistance of counsel by failing to secure a
> detailed order from the trial court when it denied his immunity
> motion.  The Defendant has failed to demonstrate how counsel's
> failure to obtain a detailed order prejudiced the Defendant in this
> case.  The issue was heard by the trial court and was considered
> preserved for appeal in that it was reviewed by the appellate
> court, despite a detailed order not being entered.  Defense
> counsel cites to <u>McDaniel v. State</u>, for the premise that a failure
> of a trial court to give its reasons for denying a SYG motion as
> automatic cause for reversal.  24 So. 3d 654 (Fla. 2d DCA 2009).
> The <u>McDaniel</u> case is distinguishable and therefore not
> controlling.  The issue presented in <u>McDaniel</u> was that the State
> had proceeded to the hearing under a theory that the motion was
> one for dismissal under rule 3.190(c)(4) and the Defense had
> proceeded to the hearing under a theory of Stand Your Ground.
> The Trial Court's denial of the motion without explanation as to
> what theory it applied created an issue on appeal because the
> appellate court was unable to determine if the appropriate
> standard of review was applied.  The failure to obtain a detailed
> order in that case frustrated having the issue heard on direct
> appeal.  That is not the situation before the Court.  The Stand
> Your Ground issue[] in this case was preserved for direct appeal.
> Again, the Court finds that even if trial counsel was ineffective in
> failing to obtain a detailed order from the trial court, the
> Defendant has failed to demonstrate prejudice[].   Therefore
> Ground 2, is **DENIED**.

Ex. E1 at 119-20. On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. E5; Martin v. State, 310 So. 3d 920 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

Specifically, although the trial court did not enter a written order denying the defense motion, this did not prevent Martin from challenging the ruling as the first point in his direct appeal. *See* Ex. B8 at ii, 10-12; *see also* Ex. E1 at 143. The State agreed the issue was preserved for appeal. Ex. B9 at 13. Thus, as the state post-conviction court determined, even if defense counsel performed deficiently by not securing a detailed written order from the trial court, Martin has not demonstrated prejudice. That the First DCA affirmed the issue does not mean defense counsel was ineffective.

Based on the foregoing, Petitioner Martin has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## <u>Ground 4</u>:  IAC – No Special Instruction

In his fourth ground, Martin asserts his trial counsel provided ineffective assistance by "failing to request [a] special instruction on Martin's right to possess a firearm by a convicted felon for limited purposes."  ECF No. 1 at 31.  Martin asserts his "sole defense was the justifiable use of deadly force in defense of his cousin" and "[t]he standard instruction on the justifiable use of deadly force given to the jury required Martin to retreat before using deadly force because he was engaged in unlawful activity, to wit:  a felon in possession of a firearm."  *Id*.  Martin explains "there is an exception to the general rule that a felon in possession of a firearm is unlawful activity" and "[t]hat exception is when the felon arms himself out of necessity."  *Id*.  Martin asserts that the prosecutor asked him during cross "if he knew that as a convicted felon he was not allowed to have possession of a firearm, to which he answered in the affirmative," and the prosecutor "capitalized on this fact during closing argument and stated that under the facts of this case Martin had a duty to retreat, which he did not do."  *Id*. at 33.  Martin asserts defense counsel performed deficiently because "[b]y the time Counsel argued necessity and requested the Court to give the instruction on lawful possession of a firearm by a convicted felon, the jury had already found Martin guilty of aggravated battery with a firearm" and "[i]t was only during

the bifurcated portion of the trial that the jury became aware of the defense of necessity." *Id*. at 33-34.  Martin concludes:

> Provided the necessity defense would have been presented in concert with the justifiable use of force defense, the jury would have been able to determine that Martin did not have a duty to retreat before using deadly force in defense of his cousin.  It is apparent from the record that Martin had a reasonable belief that his actions were necessary to preclude death or serious bodily injury, or to keep Casper from continuing his commission of a forcible felony on Brian.  Following the law, based on the facts of this case, there is a reasonable probability that the jury would have found Martin's actions justifiable. Counsel, however, failed to see the necessity in presenting the necessity defense in concert with the justifiable use of force defense; and thus, his failure resulted in deficient performance which affected the outcome of the trial.

*Id*. at 34.

As Respondent indicates, Martin raised this claim in the third ground of his Rule 3.850 motion.  Ex. E1 at 24-28; *see* ECF No. 9 at 8-9.  The state postconviction trial court denied the claim, making the following findings:

> In Ground Three, Defendant alleges that Mr. Davis rendered ineffective assistance of counsel by failing to request a special instruction on the Defendant's right to possess a firearm as a convicted felon for limited purposes.  The trial was bifurcated and therefore during the first phase of the trial the jury was only determining whether the Defendant committed an aggravated battery with a deadly weapon, they were not making any determination about the legality of the possession of the firearm. It was correct for counsel for the Defendant to not request a necessity instruction for the possession of the firearm at that time because the issue was not ripe.  Instead, the jury was appropriately instructed on justifiable use of deadly force (Tr. p. 245-246).  After the jury rendered a finding of guilt for Aggravated

Battery with A Deadly Weapon, the parties proceeded into the bifurcated phase of the trial, Possession of a Firearm by Convicted Felon. During that phase the jury was instructed on the defense of necessity (Tr. 273). Defense counsel did not provide ineffective assistance of counsel by failing to seek a necessity instruction during the Aggravated Battery with A Deadly Weapon phase of the trial; it would have been confusing to the jury after being instructed on justifiable use of deadly force. The Defense has failed to demonstrate that the Defense [counsel] acted ineffectively and furthermore has failed to demonstrate that confidence in the outcome is undermined. Ground Three is therefore **DENIED**.

Ex. E1 at 120-21. On appeal, the First DCA per curiam affirmed the case without a written opinion. Ex. E5; Martin v. State, 310 So. 3d 920 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55. A review of the record supports the state courts' determination. *See* Wilson, -- U.S. --, 138 S. Ct. at 1192.

In particular, as the state post-conviction trial court explained, the trial transcript indicates that, during the bifurcated phase of the trial involving the charge of possession of a firearm by a convicted felon, the trial judge instructed the jury on the defense of necessity, pursuant to defense counsel's request:

Now, an issue in this case is whether the defendant was justified in possessing a firearm while a convicted felon. It is a defense to possessing a firearm while a convicted felon.

If the defendant acted out of necessity, in order to find the defendant was justified, you must find the following five elements.

One, the defendant must be in a present, imminent and impending period of death or serious bodily injury, or reasonably believe himself or others to be in such danger.

Two, that the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct.

Three, that the defendant must not have any reasonable legal alternative to possessing the firearm.

Four, that the firearm must be made available to the defendant without preconceived design.

And, five, that defendant must give up possession of the firearm as soon as necessity or apparent necessity ends.

Imminent and impending means the danger is about to take place and cannot be avoided by other means. Threat of future harm is not sufficient to prove this defense, nor can the defendant use the defense of necessity if he committed the crime after the danger from the threatened harm had passed.

The reasonableness of the defendant's belief that a danger existed should be examined in light of all the evidence.

In deciding whether it's necessary for the defendant to possess a firearm, you must judge the defendant by the circumstances by which he was surrounded at the time the crime was committed.

The danger facing the defendant need not have been actual; however, to justify the possession of a firearm, the appearance of the danger must have been so real that a

reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only by possessing a firearm.

Based upon appearances, the defendant must have actually believed that the danger was real.

If you have a reasonable doubt as to whether the defendant possessed a firearm as a convicted felon out of necessity, you should find the defendant not guilty.

However, if you're convinced beyond a reasonable doubt that the defendant did not possess the firearm out of necessity, you should find the defendant guilty if all the elements of the charge have been proved.

Ex. B4 at 273-75; *see id*. at 264-67.  The judge did not give this instruction during the first phase of the trial, involving the charge of aggravated battery with a deadly weapon.

Martin asserts defense counsel should have requested the necessity instruction during the first phase as well because then the jury would have been able to find he did not have a duty to retreat before using deadly force in defense of his cousin and a reasonable probability exists that the jury would have found his actions justifiable.  ECF No. 1 at 34.  He asserts he had "a reasonable belief that his actions were necessary to preclude death or serious bodily injury, or to keep Casper from continuing his commission of a forcible felony on Brian."  *Id*.

As the state post-conviction trial court found, during the first phase of the trial, the jury had to determine whether Martin committed an aggravated battery with a deadly weapon and, during this phase, the jury was not making a determination about the legality, in and of itself, of the possession of the firearm.  Ex. E1 at 120.  The state post-conviction trial court found it was "correct" for defense counsel "to not request a necessity instruction for the possession of the firearm at that time because the issue was not ripe" in the first phase and, instead, "the jury was appropriately instructed on justifiable use of deadly force."  *Id*.  The court concluded defense counsel had not provided ineffective assistance and "it would have been confusing to the jury after being instructed on justifiable use of deadly force."  *Id*. at 121.

Nevertheless, in an appeal from a conviction for second-degree murder decided by the First DCA, the trial court gave a jury instruction on justifiable use of deadly force that included the necessity defense.  <u>Hardison v. State</u>, 138 So. 3d 1130 (Fla. 1st DCA 2014).  Hardison argued on appeal that "the standard instruction given on justifiable use of deadly force was fundamentally erroneous" as it "is inconsistent with current law because it effectively makes the defense available only to persons not engaged in unlawful activity."  *Id*. at 1130.  The First DCA explained the trial court had "instructed the jury on the justifiable use of deadly force . . . based on

Standard Jury Instruction (Criminal) 3.6(f)." *Id.* at 1131.  The court included in the instruction that "[p]ossession of a firearm by a convicted felon is an unlawful activity" and then also read instructions, requested by defense counsel, that included the necessity defense.  *Id.* at 1132.  The First DCA discussed the Second DCA's decision in <u>Little</u> and the Fourth DCA's decision in <u>State v. Wonder</u>, 128 So. 3d 867 (Fla. 4th DCA 2013), and concluded the standard jury instruction was not fundamentally flawed and the instruction given in Hardison's case did not result in fundamental error:

> These decisions suggest that Standard Jury Instruction 3.6(f) could stand revision to clarify the circumstances under which the use of deadly force is justified.  However, we make no such assertion today, and we decidedly do not hold that the standard instruction is fundamentally flawed.  We do hold, however, that even if Hardison is correct that the portion of the standard instruction corresponding to section 776.012(1) erroneously omits the "no duty to retreat" statutory language, such omission did not result in fundamental error in his case.

*Id.* at 1134.  The First DCA explained that Hardison had testified at trial to being a convicted felon and thus his being in possession of a firearm was relevant.  *Id.*  The First DCA further explained that the trial court gave the standard jury instructions on self-defense and "unlawful activity," with additional language requested by defense counsel discussing necessity and based on <u>Marrero v. State</u>, 516 So. 2d 1052 (Fla. 3d DCA 1987):

> However, in certain circumstances, a convicted felon may lawfully possess a firearm. *Those circumstances are, one, the*

> *felon must be in present, imminent and impending peril of death
> or serious bodily injury, or reasonably believed himself or others
> to be in such danger*; two, the felon must not have intentionally
> or recklessly placed himself in a situation in which it was probable
> that he would be forced to choose the criminal conduct.  Three,
> the felon must not have a reasonable, legal alternative to
> possession [of] the firearm.  Fourth, the firearm must be made
> available to the felon without preconceived design.  And, five, the
> felon must give up possession of the firearm as soon as
> necessity or apparent necessity ends.

*Id*. (emphasis added by First DCA).  *Cf*. Marrero v. State, 516 So. 2d 1052,

1054 n.3 (Fla. 3d DCA 1987) ("As we see it, the problem with using 'duress'

or 'self-defense' to describe the defense to the charge of possession of a

firearm by a convicted felon is that the defendant may very well be excused

from his assault upon his assailant by reason of duress or self-defense

without being excused from his possession of the firearm, because he either

had other alternatives to the possession of the firearm or possessed it

beforehand.  The word 'necessity' more accurately describes the defense to

the possession charge, but it may carry some baggage associated with the

duress defense.  We prefer and will use the still more general term

'justification.').

The First DCA explained that "[h]ad the instruction not included the

language based on Marrero, thereby potentially leading the jury to judge

Hardison's defense solely on his unlawful possession of a firearm, we might

be inclined to find merit in his claim of fundamental error," but when the court

considered "the complete instruction on justifiable use of deadly force given in this case," it concluded "the jury was sufficiently instructed that, absent a reasonable believe he was under threat of imminent death or great bodily harm, or imminent commission of a forcible felony, Hardison's use of deadly force in self-defense was not justified." Hardison, 138 So. 3d at 1134-35. The court further explained, "The evidence put before the jury could support a finding that, Hardison's belief that the threat was imminent was unreasonable, whether or not he was engaged in unlawful activity." *Id*. at 1135. The court thus concluded no fundamental error occurred. *Id*.

Similarly, in this case, Martin had testified in the first phase that he was a convicted felon and that he had fired the gun. Ex. B4 at 167, 174-77, 190. Following the logic of Hardison, it seems defense counsel could have requested the necessity instruction during the first phase of the trial. As explained in the analysis of Ground 2, *supra*, and Grounds 5 and 1, *infra*, however, the state of the law at the time was in flux. Indeed, the First DCA's opinion in Hardison was released May 14, 2014 – five months after Martin's trial. Accordingly, defense counsel did not perform deficiently by not requesting the additional necessity instruction. *See, e.g.,* Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the

alleged error and in light of all the circumstances, and the standard of review is highly deferential."); <u>Black v. United States</u>, 373 F.3d 1140, 1144 (11th Cir. 2004) (explaining "counsel's ignorance of a well-defined legal principle could be inexcusable and demonstrate ineffective performance by counsel," but "[i]f the legal principle at issue is unsettled, . . . counsel will not have rendered deficient performance for an error in judgment").

Based on the foregoing, Petitioner Martin has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### <u>Ground 5</u>:  IAC – No Objection to Erroneous Instruction

In his fifth ground, Petitioner Martin asserts his trial counsel provided ineffective assistance by failing "to object to the erroneous justifiable use of force instruction."  ECF No. 1 at 36.  As Respondent indicates, Martin raised this claim in the fourth ground of his Rule 3.850 motion.  *See* Ex. E1 at 28-30; ECF No. 9 at 9.  The state postconviction trial court denied the claim:

> In Ground Four, the Defendant alleges Mr. Davis failed to object to the erroneous instruction on justifiable use of force.  At the time of the Defendant's trial in December 2013, Fla. Stat. §776.012 did not require the duty to retreat before a person used deadly force in the defense of others, whether the defendant was engaged in unlawful activity or not.  This Court agrees that the

> jury should have been instructed that the Defendant had no duty
> to retreat based on the law at the time.  The Court also agrees
> that the State did mention the duty to retreat in its closing
> argument; however the State's main argument as to justifiable
> use of deadly force hinged on the reasonableness of the
> Defendant's action under the circumstances.  The Defense has
> failed to demonstrate that another outcome was likely had the
> correct instruction been given (i.e. that that jury would have found
> that the Defendant was justified in using the deadly force that he
> did).  This Court finds that the defense has failed to demonstrate
> such prejudice.  Therefore Ground Four is **DENIED**.

Ex. E1 at 121.  On appeal, the First DCA per curiam affirmed the case without

a written opinion.  Ex. E5; Martin v. State, 310 So. 3d 920 (Fla. 1st DCA

2021) (table).  This adjudication on the merits is entitled to AEDPA deference

under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the

decision.  *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.  A review

of the record and law supports the state courts' determination.  *See* Wilson,

-- U.S.--, 138 S. Ct. at 1192.

At the time of Martin's offense (May 2012) and trial (December 2013),

the Florida statutes pertaining to the defense of justifiable use of deadly force

included sections 776.012, 776.013, and 776.031, Florida Statutes.  *See*

Little v. State, 111 So. 3d 214, 219-22 (Fla. 2d DCA 2013).  Martin based his

self-defense argument on section 776.012, Florida Statutes (2011):

> **776.012  Use of force in defense of person.** – A person
> is justified in using force, except deadly force, against another
> when and to the extent that the person reasonably believes that
> such conduct is necessary to defend himself or herself or another

against the other's imminent use of unlawful force.  However, a person is justified in the use of deadly force and does not have a duty to retreat if:

> (1)  He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or to prevent the imminent commission of a forcible felony; or

> (2)  Under those circumstances permitted pursuant to s. 776.013 [titled "Home protection; use of deadly force; presumption of fear or death or great bodily harm."].

In particular, Martin's theory of defense was that his use of deadly force was justified under section 776.012(1) to prevent Casper Dickey from killing or causing great bodily harm to Martin's cousin, Brian.  He argues that because he presented testimony and evidence that his use of deadly force was justified, his attorney provided ineffective assistance by not objecting to the trial court's instruction to the jury regarding his "unlawful activity" as such then required the jury to consider whether he had a duty to retreat, when this was actually a situation where such duty did not exist.

The trial transcript reflects the judge instructed the jury regarding the justifiable use of deadly force:

> An issue in this case is whether defendant acted in self-defense.  It is a defense to the offense with which the defendant is charged if the injury to Casper Dickey resulted from the justifiable use of deadly force.

> Deadly force means a force likely to cause death or great bodily harm.  A person is justified in using deadly force if he

reasonably believes that such force is necessary to prevent, one, imminent death or great bodily harm to himself or another; or two, the imminent commission of an aggravated battery or aggravated assault against him or another.

The crime of aggravated battery is defined as, one, an intentional touch or strike against someone's will; two, a deadly weapon was used.

The crime of aggravated assault is defined as, one, an intentional or unlawful threat either by word or act to do violence to another.

Two, at the time the person appeared to have the ability to do so.

Three, the act of this person created a well-founded fear that the violence was about to take place.

Four, the assault was made with a deadly weapon.

In deciding whether defendant was justified in the use of deadly force, you must judge him by the circumstances by which he was surrounded at the time the force was used.

The danger facing the defendant need not have been actual. However, to justify the use of deadly force, the appearance of danger must have been so real, that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force.

Based upon the appearances, the defendant must have actually believed that the danger was real.

**If the defendant was not engaged in an unlawful activity** and was attacked in a place where he had a right to be, **he had no duty to retreat** and had the right to stand his ground and meet force with force, including deadly force if he reasonably believed that it was necessary to do so to prevent death or great

bodily harm to another, or to prevent the commission of an aggravated assault or aggravated battery.

In considering the issue of self-defense, you may take into account the relative physical abilities and the capacities of the defendant and Casper Dickey.

If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.

However, if from the evidence you are convinced that the defendant was not justified in the use of deadly force, you should find him guilty if all the circumstances of the charge have been proved.

Ex. B4 at 245-47 (bold emphasis added); *see* Std. Jury Instr. (Crim.) 3.6(f) (2013); In re: Std. Jury Instr. Crim. Cases, 27 So. 3d 640, 641, 643-44 (Fla. 2010); Novak v. State, 974 So. 2d 520 (Fla. 4th DCA 2008).

Martin argues that his trial counsel rendered ineffective assistance by not objecting to the inclusion of the language, bolded in the quote, in the jury instructions. Notably, the trial court did not instruct the jury further regarding "unlawful activity" or that "[p]ossession of a firearm by a convicted felon is an unlawful activity." *Cf.* Garrett v. State, 148 So. 3d 466, 469 n.1 (Fla. 1st DCA 2014); Garrett v. Sec'y, 2022 WL 125323, at *3-4 (Jan. 13, 2022) (order by district judge denying § 2254 petition and explaining, in relevant part, that state trial court instructed jury, tracking language of Standard Jury Instruction (Crim.) 3.6(f) and also including, at prosecution's request in accordance with

Dorsey v. State, 74 So. 3d 521 (Fla. 4th DCA 2011), and over defense counsel's objection, "the common law instruction for the duty to retreat that 'possession of a firearm by a convicted felon constitutes unlawful activity'").

As explained in the analysis of Ground 2, *supra*, the state of the law in this area was in flux, at least during the time prior to 2014.  Following Little, which the Second DCA decided on April 10, 2013, and pursuant to Garrett v. State, decided by the First DCA on August 22, 2014, because Martin presented some evidence to support his claim of justifiable use of deadly force, he would have been entitled to request and receive an instruction reflecting section 776.012(1), including that "a person using deadly force in circumstances in which the perceived threat of death or great bodily harm is imminent does not have a duty to retreat."  Garrett v. State, 148 So. 3d 466, 470 (Fla. 1st DCA 2014) (following Little).  "The fact that he was a convicted felon in unlawful possession of a firearm did not apply to the jury's consideration of whether [Martin] had a duty to retreat under section 776.012(1)."  *Id*. at 471.  Accordingly, as the state post-conviction court determined, "the jury should have been instructed that the Defendant had no duty to retreat based on the law at the time."  Ex. E1 at 121.

Nevertheless, as pointed out in Reyes, quoted extensively in the analysis of Ground 2, *supra*, the Second DCA in Little noted that a Fourth

DCA decision, <u>Hill I</u>, 95 So. 3d at 435, "could be read broadly as holding the opposite – 'that a defendant who is engaged in an unlawful activity is not entitled to immunity under section 776.032(1),' which incorporates by reference section 776.012." <u>Reyes</u>, 2020 WL 3542651, at *9; *see* <u>Little</u>, 111 So. 3d at 222.    The Eleventh Circuit has also pointed this out, in an unpublished opinion, explaining the uncertainty that existed at the time and rejecting the petitioner's argument on appeal from the denial of a procedurally defaulted claim:

> Three months before Curry-Pennamon's trial [in July 2013], the Second District Court of Appeal[] certified a question to the Florida Supreme Court asking it to decide whether a defendant engaged in an unlawful activity could be immune from prosecution under section 776.012(1). <u>Little v. State</u>, 111 So. 3d 214, 222-23 (Fla. Dist. Ct. App. 2013).  The court in <u>Little</u> held that a felon in possession of a firearm at the time of the shooting could not avoid prosecution under section 776.013 but could do so under section 776.012(1).  *Id*. at 218-22.  But the court acknowledged that its decision potentially conflicted with a decision of the Fourth District Court of Appeal[] that a felon in possession of a firearm at the time of the shooting could not be immune from prosecution under section 776.013.  <u>State v. Hill</u>, 95 So. 3d 434, 434 (Fla. Dist. Ct. App. 2012).  Although the state supreme court never answered the question, effective June 20, 2014, amended section 776.012 provides that a person is justified in using deadly force only if he is *not* engaged in criminal activity, Fla. Stat. § 776.012(2).
>
> The uncertainty as to section 776.012(2) at the time of Curry-Pennamon's trial established that his claim of ineffective trial counsel was not substantial and did not provide cause to excuse his procedural default.  *See* <u>Martinez [v. Ryan]</u>, 566 U.S. [1], 14 [(2012)].  Trial counsel could not predict whether Curry-

Pennamon could justify his use of deadly force when, according to the trial court, he had been engaged in the unlawful activity of carrying a concealed weapon without a permit. *See* <u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1334 (11th Cir. 2016) ("[W]e have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.").  So trial counsel was not ineffective in failing to request a jury instruction based on section 776.012(1).  *See* <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1057 (11th Cir. 2019) ("It is not ineffective assistance for counsel to fail to make an objection or motion that depends on the future development of the law.").

<u>Curry-Pennamon v. Sec'y, Fla. Dep't of Corr.</u>, No. 20-14106, 2022 WL 3371641, at *6 (11th Cir. Aug. 16, 2022).

Likewise, by the time of Martin's trial in December 2013, the issue had not been clarified.  The First DCA released its opinion in <u>Garrett</u>, following <u>Little</u>, on August 22, 2014.  <u>Garrett</u>, 148 So. 3d at 466.  Given the uncertainty as to section 776.012, it does not seem that defense counsel acted unreasonably in not objecting to, and accepting, the jury instructions during Martin's December 2013 trial.

Indeed, the instructions as given tracked the Florida Standard Jury Instructions for Criminal Cases in place at the time, approved by the Florida Supreme Court.  *See* <u>In re: Std. Jury Instr. Crim. Cases</u>, 27 So. 3d 640 (Fla. 2010).  *See also, e.g.*, <u>State v. Floyd</u>, 186 So. 3d 1013, 1019 (Fla. 2016) (explaining that "the Florida Standard Jury Instructions in Criminal Cases are the fruits of an effort to ensure clarity and eliminate imprecision in jury

instructions and "[t]hus, while the standard jury instructions are not binding precedent, they are approved by this Court and enjoy a presumption of correctness").  Thus, although the state post-conviction court "agree[d] that the jury should have been instructed that the Defendant had no duty to retreat based on the law at the time," Martin's defense counsel's allowing the approved standard jury instructions to be given, without objection, did not render counsel's performance deficient.  *See* Black, 373 F.3d at 1144 ("If the legal principle at issue is unsettled, . . . counsel will not have rendered deficient performance for an error in judgment."); *see also* Conrad v. Sec'y, Fla. Dep't of Corr., 663 F. App'x 746, 753 (11th Cir. 2016) ("Florida precedent indicates that trial counsel's failure to object to standard jury instructions that had not been invalidated by the Florida Supreme Court do not render counsel's performance deficient."); Floyd, 186 So. 3d at 1022 ("[T]he justifiable use of force is recognized as a somewhat complex area of the law that will necessarily yield complex jury instructions.").

In addition, the record supports the state post-conviction court's findings that although "the State did mention the duty to retreat in its closing argument; . . . the State's main argument as to justifiable use of deadly force hinged on the reasonableness of the Defendant's action under the circumstances."  Ex. E1 at 121.  In the initial part of the State's closing, the

prosecutor emphasized that Casper Dickey did not have a gun and the

prosecutor did not mention "duty to retreat," concluding:

> There's going to be an issue of self-defense, and I expect the defense is going to talk about when [sic] this when they get up and do their closing argument. And what I'd really ask you to do is play close attention to the jury instruction on self-defense. Because one of the, one of the key things that the instruction talks about is reasonably cautious and prudent person.

> What would a reasonably cautious and prudent person do if they're in the same circumstances that the defendant found himself in?

> You consider all of these same circumstances that the defendant is in, and then you use a reasonable, cautious, prudent person, and would they do what the defendant did in this case?

> And I'd argue that the law doesn't justify Mr. Martin turning around walking towards his cousin, and Casper Dickey [sic] raising his hand up, aiming it at Casper Dickey and shooting. That's not justified. The law doesn't justify that kind of shooting. It doesn't matter what else is going on.

> Maybe it's justified if you're shooting at the one person that they say had a gun. Maybe if you're shooting at Brad Gathers, who the defendant says has the gun, but Brad Gathers is way over on the other side of the store. Casper Dickey is the only person that Michael Martin is aiming at. So that's just not justified, folks.

> Again, you don't get to bring a gun to a fistfight. You don't shoot the only man that you know for a fact is unarmed.

> When you take a look at all of the evidence, the photographs, the videos, some of the other exhibits, and you think about all of the testimony in this case, I'd urge you that it

> leads you to one conclusion, and that's that Michael Martin is guilty of the aggravated battery with a firearm of Casper Dickey, a firearm that he actually possessed, that he discharged, and he caused great bodily harm.
>
> I argued to you that it's great bodily harm because Casper Dickey got shot through, into the chest, out of the chest. He ended up with a giant chunk of metal in his arm. And I'd certainly suggest to you that that's great bodily harm. Thank you.

Ex. B4 at 219-20; *see id*. at 211-20 (first portion of State's closing).

Defense counsel then made his closing argument to the jury, urging the jurors "to judge him by the circumstances by which he was surrounded at the time the force was used" and "put yourself in the position of judging Brian Martin under the circumstances and at the very time and the information he had available at the time that deadly force was used." *Id*. at 221-22. Defense counsel argued:

> We also have a cultural chasm here that's huge between what I perceive you as jurors are and we are as educated people, and the people that we have heard testify. We, you know, you don't come from a culture where your mother, your aunt and all your buddies are convicted felons.
>
> But as you hear these jury instructions and you hear about the justifiable use of deadly force, the judge will not tell you that there's an exception that if you're a convicted felon, you don't have the opportunity to avail yourself of this self-defense like any other human being and all animals on this planet.

*Id*. at 222-23. Defense counsel further argued that Martin was not engaged in unlawful activity and did not have a duty to retreat:

And things happen to your adrenaline. Things happen to your thought processes. And if you do things like Leamont did when he got his gun that he had stashed away and that nobody knew about, and he froze at the wheel. He turns around. He doesn't know what to do.

But let's look at some of the circumstances as the law tells you that you have to at that time. And if you have a reasonable doubt as to whether or not self-defense is appropriate in this case, you've got to give the benefit of that to the defendant, because that's also what the law tells you. He doesn't have to prove beyond a reasonable doubt that he used, he was justified in the use of deadly force.

But here's a guy minding his own business, doing nothing, not committing a felony. And the law further tells you that he doesn't have to run from the danger. If you're in a law abiding activity in a place you have got a right to be, which is a public parking lot in front of a convenience store that serves the community, I don't know how many, probably 24 hours a day except when it's closed when the police are out there cleaning up behind some shooting which is apparently all too common, he has the right to stand his ground.

He doesn't have to run. But what did he do? He ran. In the face of this deadly force, he ran. He tried to avail himself of, the better part of discretion is to haul butt when you get a chance. And just like this other young man, not only did he run, he ran by the car . . . .

*Id*. at 225-26. Defense counsel asserts, "And then you see in the video people start running. That's kind of, probably is a pretty good indication there was something going on other than a fistfight, because they weren't too worried when these guys were just fighting." *Id*. at 227.

Defense counsel continues, focusing on Michael Martin's perception of the situation, mentioning that he is a convicted felon:

> And the next thing you know, they all start running. Well, there's something happened up there to change that equation. Michael Martin told you that what changed that equation is the guy gets out and hits his cousin [, Brian Martin]. Can you believe that?
>
> Hits him and he's got a spot on the side of his head, bleeding profusely. I don't remember which side it was on. Blood all over and causing him to start puking all over the place, and ends up in the hospital. And thought something was seriously wrong with him because they put him in a medically induced coma thinking that he had a bullet in his head, and kept him there for two days.
>
> You think a person that's there on the scene and it's his cousin sees the same thing, sees the blood, sees him go down and hears the shot, think he's shot, doesn't have some reasonable well-founded reason to believe that he's in imminent danger of great bodily harm or having a forcible felony being committed upon him, either aggravated assault or aggravated battery. And it doesn't matter who's doing it at this point if he's using the force to prevent that from happening to his cousin.
>
> And he said, well, all I saw is, you know, I ran – you can see the remorse in that. That violates the street code. That violates the code of these young men. I left my cousin there. He kept going back and saying, I left him there. And you can tell he feels bad because he left his cousin there and he ran from the danger, and his cousin was unable to.
>
> But then when he looked back, you know, he's trying to outrun the lead at that point. He gets to this little car, and there are four big guys – or at least five came there, and four big guys are trying to get in this cracker box thing about this big.

And, you know, they're all going to be wearing door frames if they get in that thing at the same time, because intent [sic] of they're still taking fire, they've got people running. He thinks Brian is right with him. When he looks around, he sees Brian on the ground, heard a shot, and Brian says, help me, I'm hit.

Little things. You see little, little things. And little things are what people don't think about. Little thing are maybe what lawyers think about and people pick these videos apart and have time to pick them apart. But here's a little thing.

He says, I looked and I saw, I heard the shots. I saw him fall, or I turned around and he was down. I saw him fall. I saw he was bleeding, and I heard him cry out for help. And I also, the last thing I saw, was Casper Dickey in a position like this.

Now, you keep in mind that at that point, Mike Martin is in front of Mr. Dickey. Mr. Dickey is in behind his cousin. They're all going towards the same car, or at least Brian is going toward the same car. Brian is on the ground. The last thing he sees is Mr. Dickey – and he used that gesture. You saw it on the stand. You saw it when he testified. It's not something orchestrated or made up.

And he says, sir, I never – he kept saying, sir, I never saw him with a weapon. That don't mean he didn't have one. I just never saw it. . . .

A young man like that not [sic] would have never thought to make something like that up. It just happened to fit the facts, just happened to fit the medical evidence, just happened to fit the photographs that the State put into evidence. Little things. Little things that you would never think about if you were trying to lie.

You heard how he was grilled. This guy is a convicted felon, been to prison, and grilled by a seven-year college graduate professional, experienced professional. And did he ever waiver? Did he ever, did he ever break? Did he ever do anything or say anything that showed he was trapped?

> Everything he said was just consistent.  And it was consistent with the person that was faced with such a dangerous situation that even in the culture that he grew up in, it put a tremendous amount of pressure on him.

*Id*. at 225-32.  Defense counsel indicated "[t]he judge will describe it to you, or he'll give you the full instructions on self-defense" and then stated, "No duty to retreat, although my client tried."  *Id*. at 234.

In rebuttal, the prosecutor told the jury defense counsel "is right about what the jury instructions say" and "ultimately that is going to be your decision as to whether or not Mr. Martin was acting in self-defense."  *Id*. at 235.  The prosecutor challenged defense counsel's description of Dickey's position when Martin fired the gun.  *Id*. 236.  The prosecutor asserted "[t]he defense wants you to speculate that Casper Dickey could have been armed," but "[t]here's absolutely no evidence whatsoever that he had a gun" and the jury "shouldn't speculate that he had a gun."  *Id*. at 237.   The prosecutor continued:

> The defense is right, when you're considering self-defense, you do, you do look at it through the defendant's eyes, but only to a certain extent.  Yeah, you judge the circumstances he finds himself in, but then you use the standard of what a reasonably cautious and prudent person would do in those circumstances.  Could that danger have been avoided only through Mr. Martin turning around and shooting Casper Dickey?  And I would argue that that just can't be possible, because Casper Dickey is not the one shooting.  So how can the danger be avoided, the danger of some other guy?

Let's assume the defendant's correct and all the defense witnesses are absolutely correct in what they say. There's some other guy, let's say it's Brad Gathers, he's shooting. He's on the complete other side of the store from Casper Dickey. There's no way you can say that avoiding the danger from Brad Gathers shooting just randomly it's somehow avoided by shooting Casper Dickey? That's just not reasonable, folks. That is absolutely not reasonable.

*Id*. at 238. After this argument, the prosecutor referenced the jury instruction on duty to retreat if not engaged in unlawful activity and Martin's actions:

One of the things that is contained within the jury instruction is that a person does not have a duty to retreat if they're not engaged in unlawful activity. **Well, in this case, Mr. Martin told you he's engaged in unlawful activity. He told you he's a convicted felon in possession of a firearm. He told you that. So he does have a duty to retreat. He has a duty to retreat**, and he does start retreating. The defense is absolutely right. He starts retreating back to his car.

But then he stops retreating. He gets this gun out, and he turns around, he walks toward Casper Dickey and his cousin. His cousin that he cares so much for that he closes his eyes and just shoots Casper Dickey right when his cousin is standing there. Again, we're talking about reasonableness.

*Id*. at 239-40 (emphasis added). The prosecutor then again described the events leading to the aggravated battery charge, as reflected in the surveillance video, concluding:

And one of the things you see is the defendant running back to the car. You see Brian Martin trip on his own. He is not knocked down. He's not shot. He trips over his own feet.

Yeah, you see Casper Dickey's shirt was coming after him. You see Casper Dickey getting him as he's getting off the

ground.  Then you start seeing them fighting again the whole time.

> And it's interesting, while this was going on, here comes Mr. Martin in the background in his black clothing walking from the rear of the car, the gray small four-door sedan Hyundai, Kia, whatever it may have been.  He walks right up.  He walks right up to Casper Dickey, and again, just like I said, shoots him on the right side.  So there's absolutely no way that he could think – it's not reasonable for him to think that Casper Dickey was armed.

> Folks, I would suggest to you that this case is pretty cut and dry.  The facts really aren't in dispute other than what the video means.  I would agree with the defense, the video, the photographs that were made from the video basically, they speak for themselves.

> Really, when you go back and you're in the jury room, really the hardest part for you all is going to decide which one of you is going to sign the verdict form finding Mr. Martin guilty of aggravated battery.  That's really going to be the hardest part for you all, of [sic] because the evidence speaks for itself.

> Thank you for your time.

*Id*. at 240-41.

From the above, the prosecutor mentioned "unlawful activity" and "duty to retreat" only in the rebuttal, in response to defense counsel's argument that Martin was not engaged in unlawful activity and had no duty to retreat. The prosecutor also stated that Martin did retreat or "start retreating," to a point.  The transcript of the closing arguments supports the post-conviction trial court's finding that the focus of the prosecutor's argument "as to

justifiable use of deadly force hinged on the reasonableness of the Defendant's action under the circumstances."  Ex. E1 at 121.

Based on the foregoing, Petitioner Martin has not demonstrated that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## <u>Ground 6</u>:  IAC – Cumulative Error

In his sixth ground, Petitioner Martin asserts, "The cumulative effect of Counsel's errors resulted in ineffective assistance of counsel."  ECF No. 1 at 15.  As Respondent indicates, Martin raised this claim in the fifth ground of his Rule 3.850 motion.  *See* Ex. E1 at 30-31; ECF No. 9 at 9.  The state postconviction trial court denied the claim, making the following findings:

> In Ground Five, the Defendant alleges he received ineffective assistance of counsel due to the cumulative effect of Mr. Davis' errors.  Based on the Court's previous findings of no ineffective assistance and prejudice to the Defendant, the Court finds no cumulative error.

Ex. E1 at 121-22.

On appeal, the First DCA per curiam affirmed the case without a written opinion.  Ex. E5; <u>Martin v. State</u>, 310 So. 3d 920 (Fla. 1st DCA 2021) (table). This adjudication on the merits is entitled to AEDPA deference under 28

U.S.C. § 2254(d), even though no reasoning is set forth in the decision. *See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.

Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims. Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))). Moreover, as the state postconviction court concluded, because each individual ground fails, this ground likewise fails and should be denied. *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

Based on the foregoing, Petitioner Martin has not demonstrated that the state courts' rejection of this ground involved an unreasonable

application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

## Ground 1:  IAC – Appellate Counsel

In his first ground, Petitioner Martin asserts his appellate attorney provided ineffective assistance as he did not "raise a claim that the justifiable use of force instruction given at trial negated his sole defense and constituted fundamental error."  ECF No. 1 at 16.  As Respondent indicates, Martin raised this claim in state court as the only ground in his petition alleging ineffective assistance of appellate counsel filed in the First DCA.  Ex. D1 at 15-25; *see* ECF No. 9 at 7.  As set forth above, on October 31, 2018, Judges Osterhaus and Winsor denied Martin's petition with no explanation.  Ex. D4; Martin v. State, 257 So. 3d 153 (Fla. 1st DCA 2018).  Judge Wolf dissented, stating only that he "would grant the petition for ineffective assistance of appellate counsel," citing Andujar-Ruiz v. State, 205 So. 3d 803 (Fla. 2d DCA 2016).  Ex. D4.

In Florida, "[j]ury instructions are subject to the contemporaneous objection rule, and in the absence of a contemporaneous objection at trial, relief regarding error in the instructions can be granted on appeal only if that error is fundamental."  Floyd v. State, 850 So. 2d 383, 403 (Fla. 2002).

"Fundamental error is that which 'reaches down into the validity of the trial itself to the extent that a verdict . . . could not have been obtained without [that] error.'"   *Id*. (quoting <u>Archer v. State</u>, 673 So. 2d 17, 20 (Fla. 1996)). Because Martin's trial counsel agreed with and did not object to the jury instruction, Ex. B4 at 203, 207, set forth in the analysis of Ground 5, *supra*, Martin's ineffective assistance of appellate counsel claim turns on whether the alleged trial error is fundamental under Florida law.   *See* <u>Pinkney</u>, 876 F.3d at 1297; <u>Scott v. Sec'y, Dep't of Corr.</u>, 857 F. App'x 548, 551 (11th Cir. 2021).   "If the error is not fundamental, then [Martin's] appellate counsel would have been procedurally barred from raising it on appeal, and so he could not have been ineffective for failing to raise it."   <u>Scott</u>, 857 F. App'x at 551; *see* <u>Pinkney</u>, 876 F.3d at 1297; <u>Floyd</u>, 850 So. 2d at 403.

Indeed, the Eleventh Circuit has explained that when the state appellate court has denied a claim of ineffective assistance based on appellate counsel's failure to raise an unpreserved jury instruction error, the appellate court "has already determined, albeit implicitly, that the error was not fundamental error," and the Eleventh Circuit "must defer to the 'Florida court's underlying determinations of state law.'" <u>Pinkney</u>, 876 F.3d at 1297-98.   "[A]lthough 'the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional

dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." *Id*. at 1295.  The state appellate court would have granted relief "if it had decided that the instruction error was fundamental error ... because if the error was fundamental, the direct appeal court could have decided the issue on the merits, which would mean that appellate counsel's failure to raise the issue was ineffective assistance of counsel." *Id*. at 1298-99.

Therefore, by denying Martin's claim of ineffective assistance of appellate counsel, the First DCA implicitly concluded that the instruction given in his trial was not fundamentally erroneous.  *See* Pinkney, 876 F.3d at 1297-98.  "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." *Id*. at 1299.  "As the Supreme Court and this Court have repeatedly acknowledged, it is not a federal court's role to examine the propriety of a state court's determination of state law." *Id*.; *see* Bradshaw, 546 U.S. at 76.  Because no fundamental error occurred, Martin would not have received relief on direct appeal if his appellate attorney had raised the point and, therefore, appellate counsel's failure to do so does not constitute ineffective assistance under Strickland.

Indeed, the First DCA could have reasonably decided the jury instruction did not create error "so prejudicial as to vitiate the entire trial."

<u>Chandler v. State</u>, 702 So. 2d 186, 191 n.5 (Fla. 1997).  The court could have concluded the jury would have found Martin did not reasonably believe the use of deadly force was "necessary . . . to prevent death or great bodily harm" to himself or Brian Martin – and thus the jury would have rejected Martin's self-defense defense regardless – given the trial testimony that the victim was drunk and unarmed, and had already gotten "his behind whooped" by Brian Martin, when Petitioner armed himself and fired the gun, as argued by Respondent.  Ex. B3 at 30-31, 34; Ex. B4 at 154, 191-192, 194, 199; see Ex. B3 at 20 (defense opening stating that Brian Martin "kicks Dickey's butt"). *See* ECF No. 9 at 24.  Martin even testified that he did not see the victim with a gun.  Ex. B4 at 192.

The case of <u>Andujar-Ruiz v. State</u>, 205 So. 3d 803 (Fla. 2d DCA 2016), was cited by Martin in his First DCA petition alleging ineffective assistance of appellate counsel as well as by Judge Wolf in his dissent from the denial of the petition.  In that opinion, dated November 16, 2016, the Second DCA held the trial court's instruction that the defendant had a duty to retreat if he was engaged in an unlawful activity constituted fundamental error because it effectively deprived him of his sole defense of self-defense:

> In his petition, Andujar-Ruiz argues appellate counsel was ineffective for failing to argue that fundamental error occurred when the trial court instructed the jury that Andujar-Ruiz had a duty to retreat if he was engaged in unlawful activity.  He argues

that the instructions given were inconsistent with Florida's Stand Your Ground law, citing Little v. State, 111 So. 3d 214 (Fla. 2d DCA 2013), in which this court held that a defendant engaged in unlawful activity is not precluded from seeking immunity under section 776.012, Florida Statutes (2011), even though the same unlawful activity would prevent him or her from obtaining the immunity under section 776.013. We agree.

　　　　. . . .

　　　　Although section 776.013(3) requires that a defendant not be engaged in unlawful activity, as we explained in Little, a defendant's felonious possession of a firearm does not preclude such a defendant from raising a defense under section 776.012(1), which provides:

　　　　　　A person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. However, a person is justified in the use of deadly force and does not have a duty to retreat if:

　　　　　　(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. . . .

　　　　Here, because Andujar-Ruiz was entitled to raise a defense under section 776.012(1), the trial court's instruction that he had a duty to retreat if he was engaged in unlawful activity effectively deprived Andujar-Ruiz of his sole defense and constituted fundamental error. See Dooley v. State, 2D16-29, 206 So. 3d 87, 2016 WL 6066312 (Fla. 2d DCA October 14, 2016); Dorsey v. State, 149 So. 3d 144, 147 (Fla. 4th DCA 2014).

　　　　. . . .

> As in <u>Dorsey</u>, the instruction to the jury that Andujar-Ruiz had a duty to retreat constituted fundamental error because it effectively deprived him of his self-defense claim, his sole defense to the charges. "[W]here . . . a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant's only defense, it is fundamental error and highly prejudicial to the defendant." <u>Williams v. State</u>, 982 So. 2d 1190, 1194 (Fla. 4th DCA 2008) (alterations in original) (quoting <u>Carter v. State</u>, 469 So. 2d 194, 196 (Fla. 2d DCA 1985)). The trial court's instruction misled the jury by informing it that it was required to find that Andujar-Ruiz retreated before resorting to force, contrary to the plain language of section 776.012(1).

205 So. 3d at 805-07. The Second DCA granted the petition, reversed the convictions, and remanded for a new trial. *Id*. at 808.

As explained above, the First DCA found no fundamental error in Martin's case and thus <u>Andujar-Ruiz</u> is distinguishable. Moreover, the <u>Andujar-Ruiz</u> case was decided well after Martin's appeal. The initial brief in Martin's appeal was filed May 22, 2015, Ex. B, approximately 18 months before the <u>Andujar-Ruiz</u> decision, and the First DCA affirmed Martin's appeal in an opinion issued May 6, 2016, a little more than 6 months before the <u>Andujar-Ruiz</u> decision. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." <u>Kimmelman</u>, 477 U.S. at 381.

Petitioner Martin has not demonstrated the First DCA's rejection of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of clearly established federal law.  Accordingly, this ground should be denied.

## Conclusion

Petitioner Martin is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 7, 2023.

S/  Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.